1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  TRACY T.,

10                    Plaintiff,                    CASE NO. C18-5234-JLR-MAT

11        v.

12  NANCY A. BERRYHILL, Acting             REPORT AND RECOMMENDATION
    Commissioner of Social Security,        RE: SOCIAL SECURITY DISABILITY
                                            APPEAL
13
                        Defendant.
14

15        Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

16  the Social Security Administration (Commissioner).  The Commissioner found plaintiff was not

17  without fault in causing an overpayment of Title II Disability Insurance Benefits (DIB) and was

18  not entitled to a waiver of the overpayment. Having now considered the Commissioner's decision,

19  the administrative record (AR), and all memoranda, the Court recommends this matter be

20  REMANDED for further administrative proceedings.

21                      **FACTS AND PROCEDURAL HISTORY**

22        Plaintiff began to receive DIB in January 2002.  (AR 13.)  She subsequently engaged in a

23  trial work period, allowing her to test her ability to work while still receiving benefits.  (AR 58.)

REPORT AND RECOMMENDATION
PAGE - 1

On December 3, 2014, the Social Security Administration (SSA or agency) issued a notice informing plaintiff she was overpaid benefits in the amount of $4,095.10.  (AR 92-95.)  The overpayment spanned from August 2013 through February 2014.  (AR 96.)

Plaintiff requested a waiver.  (AR 102-17.)  The SSA denied the waiver in a decision dated May 26, 2015.  It concluded: "[Plaintiff] failed to report her wages timely.  She knew or should have known to report her wages to Social Security in a timely manner since this was her second work [continuing disability review (CDR)]."  (AR 96-99.)  An SSA field office, in a February 23, 2015 letter, also found no basis for approving the request for a waiver, again finding plaintiff failed to timely report her wages and that she "knew or should have known the necessity of timely reporting since [she] had previously had a work review."  (AR 100-01.)  Plaintiff requested a hearing.  (AR 118-26.)

On May 25, 2016, Administrative Law Judge (ALJ) David Johnson held a hearing, taking testimony from plaintiff.  (AR 710-49.)  On June 28, 2016, the ALJ issued a decision finding plaintiff had been overpaid DIB in the amount of $4,095.10 during the period from August 1, 2013 to March 1, 2014, was not without fault in causing the overpayment, that recovery of the overpayment would not defeat the purpose of Title II or be against equity or good conscience, and that plaintiff was not entitled to a waiver of the overpayment.  (AR 13-17.)

Plaintiff timely appealed.  The Appeals Council denied review on January 18, 2018 (AR 6-9), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the final decision pursuant to 42 U.S.C. § 405(g).

/ / /

REPORT AND RECOMMENDATION
PAGE - 2

### DISCUSSION

The SSA is entitled to recover or adjust for overpayment of disability benefits. 20 C.F.R. § 404.502. "To recover overpayments, the Commissioner must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount." *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000). SSA may waive recovery or adjustment if a claimant is found to be without fault for the overpayment and repayment would defeat the purpose of Title II of the Social Security Act or be against equity or good conscience. 20 C.F.R. §§ 404.506-509.

This Court will affirm a decision regarding overpayment where it is supported by substantial evidence and the proper legal standard was applied. 42 U.S.C. § 405(g); *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence review requires the Court's consideration of the administrative record as a whole, and the weighing of evidence both supporting and detracting from the decision of the Commissioner. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. Where the evidence is susceptible to more than one interpretation, the court must uphold the decision of the Commissioner. *Id*. at 1039-40. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the findings within the decision must be adequate. *See Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). A decision regarding disability benefits must include full and detailed findings of fact and, whenever a claimant's testimony is a critical factor, an explicit finding as to whether the testimony of a claimant is believed or disbelieved. *Id*. To reject testimony, there must be "'specific, cogent reasons for the disbelief.'" *Greger v.*

*Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In this case, plaintiff does not dispute the existence or amount of the overpayment. (*See* AR 14.) Plaintiff maintains error in the finding of fault and the determination that recovery of the overpayment would not defeat the purpose of Title II. She requests remand for further proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Fault</u>

Plaintiff bears the burden of establishing a lack of fault. *McCarthy*, 221 F.3d at 1126 (citing *Anderson*, 914 F.2d at 1122); *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984). A fault determination includes consideration of all "pertinent circumstances" surrounding an overpayment, including an individual's "age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." § 404.507. A finding of fault depends on whether facts show the overpayment resulted from:

(a)    An incorrect statement made by the individual which he knew or should have known was incorrect; or

(b)    Failure to furnish information which he knew or should have known to be material; or

(c)    With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id*. That the agency may have been at fault in making the overpayment does not relieve an overpaid individual of repayment if the individual is not without fault. *Id*. An individual will not be found without fault where evidence shows "either a lack of good faith or failure to exercise a high degree

REPORT AND RECOMMENDATION
PAGE - 4

of care in determining whether circumstances which may cause deductions [in] benefits should be brought to the attention of the Administration by an immediate report or by return of a benefit check." § 404.511(a)

The SSA, pursuant to its Program Operations Manual System (POMS), takes a number of factors into account in considering circumstances of an overpayment, including an individual's: (a) understanding and agreement to comply with reporting requirements; (b) knowledge of the occurrence of events that should have been reported; (c) efforts to comply with reporting requirements; (d) understanding of the obligation to return payments not due; (e) ability (as determined by age, comprehension, memory, physical and mental condition, linguistic limitations, etc.) to understand and comply with the reporting requirements; (f) ability to recognize inconsistencies and evaluate the reasonableness of SSA's actions; (g) experience in dealing with government agencies; and (h) understanding of the language used by SSA. POMS GN 02250.005 at C.1. "If the evidence clearly shows the individual did not understand and comply with reporting responsibilities, that individual can usually be found without fault. Resolve any doubt in favor of the individual." *Id.*[1]

The fault inquiry is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar circumstances of [her] situation." *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977), *aff'd in part, rev'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). "The

---

[1] "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either [the] court or the ALJ." *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1073 (9th Cir. 2010). These agency interpretations are "entitled to respect," but only to the extent they have the "power to persuade." *Id.* (internal quotation marks and quoted sources omitted). *See also Warre v. Commissioner of the Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority.")

REPORT AND RECOMMENDATION
PAGE - 5

1    fault determination requires a reasonable person to be viewed in the claimant's own circumstances

2    and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler*,

3    746 F.2d 480, 482 (9th Cir. 1984).

4        The SSA sent plaintiff requests for information concerning her work dated July 24, 2013

5    and August 28, 2013.  (AR 193-214.)   The requests referenced plaintiff's yearly earnings,

6    including 2012 earnings of $388.21 from the United States Postal Service and of $13,778.00 from

7    Evergreen State College.  Each request attached a Work Activity Report to be completed by

8    plaintiff and returned within fifteen days.  The letters stated the information provided would be

9    used by the agency to determine if plaintiff could receive or continue to receive disability benefits

10   and that, if the form was not returned, the agency may contact her employer or make a

11   determination based on evidence in their records.  (AR 193, 204.)  The letters advised that, if

12   plaintiff had questions or needed help completing the form, she could visit the agency's website,

13   call the agency, the local office, or plaintiff's Social Security contact, "J. Martin," or write or visit

14   any agency office.

15       At hearing, plaintiff testified she had at some point gone to her local office to submit

16   paystubs and was told she no longer had to do so unless something about her work changed.  (AR

17   717.)   She acknowledged receipt of the July and August 2013 letters and explained her

18   impairments, including a reading disability, make it difficult for her to fill out paperwork.  (AR

19   717-19.)  She called Martin many times and left several messages after receiving each form, but

20   never heard back.  She also called a general number for Social Security and went to her local office

21   in person, but was told she needed to keep trying to reach J. Martin.  (AR 719-20.)  Plaintiff set

22   the forms aside, but continued to call and leave messages.  (AR 720.)

23       On December 17, 2013, plaintiff's employer, Evergreen State College, responded to a

REPORT AND RECOMMENDATION
PAGE - 6

November 2013 request for earnings information.  (AR 47-50.)  The SSA, in a letter dated January 29, 2014, informed plaintiff it had reviewed her work record and determined she may not be eligible for disability benefits as of August 2013, but that the decision was not final and plaintiff could still provide more information about her work.  (AR 56-60.)  The letter directed plaintiff to contact "J. Doe" with any questions.   (AR 59.)   The record also contains a work activity questionnaire completed by plaintiff's supervisor and signed January 28, 2014.  (AR 67-71.)  A handwritten note on a fax cover page dated January 27, 2014 reflects plaintiff's authorization for her supervisor to speak with J. Doe about her employment.  (AR 67.)

On March 11, 2014, the SSA informed plaintiff she had been overpaid benefits and advised her of her right to request a waiver of the overpayment.  (AR 72-76.)  The record also includes forms completed by Evergreen State College on August 8 and 29, 2014 and a work activity report signed and dated by plaintiff on August 18, 2014, each of which indicates plaintiff's employment ended on July 31, 2014.  (AR 78-85, 87-90.)  Forms dated in September 2014 reflect a prior determination that benefits had ceased, but could be reinstated given the cessation of substantial gainful activity.  (AR 86, 91.)

Plaintiff testified she called Doe immediately after receiving the January 2014 letter, that Doe returned her call the following day and she began to fill out the form with Doe's assistance, that Doe contacted her employer to clarify some questions, and that Doe submitted the form on her behalf.  (AR 721-22.)  Doe called some two weeks later to tell plaintiff she would be assessed an overpayment, but that plaintiff should submit a waiver form and explain the circumstances surrounding the delay in submitting the work activity report.  (AR 722-23.)  However, plaintiff's mental health "went into a severe decline" and she misplaced the waiver form.  (AR 723.)  When she was able, plaintiff contacted her local office, was told she was at fault for the overpayment and

that a wavier would be denied, and that she should request a reduced payment. (AR 723-24.) Nonetheless, and with some further assistance from J. Doe, plaintiff submitted a request for waiver of overpayment. (AR 724-25.)

The record includes a request for waiver of overpayment dated September 25, 2014. (AR 102-117; *see also* AR 168-176 (additional request for waiver form dated March 10, 2016 and submitted in advance of ALJ hearing).) In an attached letter, plaintiff explained she put the request on hold because she was attempting to find a way to keep working and looking for new housing. (AR 111.) The SSA thereafter issued the notice of overpayment and denied the request for a waiver. (AR 96-101.)

The ALJ found plaintiff was not without fault in causing the overpayment. Plaintiff contended she thought the agency already had her earnings information, had difficulty understanding the forms due to her disabilities, even if she had filled out a form in the past, and repeatedly, but unsuccessfully attempted to contact J. Martin. (AR 15.) The ALJ found plaintiff failed to provide information about her earnings despite the requests for her to do so. She testified about having questions related to other information requested on the form (*see* AR 733-34), but not about her earnings, meaning "she could have provided the earnings information, while at the same time seeking clarification on the parts of the form she did not understand or providing information about her questions and confusion on the form and returning it in a timely manner." (AR 15.)

The ALJ found the fact plaintiff had some questions about the forms reasonable and found her testimony about the agency's failure to return her calls believable. However, the agency's lack of action did not absolve plaintiff's responsibility to report her earnings. Plaintiff took no further steps to provide information she could have provided, such as answering the questions she

REPORT AND RECOMMENDATION
PAGE - 8

understood, submitting a letter explaining her questions in writing and providing documentation of her confusion and failed efforts to speak with J. Martin, or seeking help from someone else. While the agency may have been partly at fault, the "key issue is whether the claimant is without fault." (*Id.*)  Because plaintiff failed to provide the requested information and it was within her ability to do so, it could not be said she was without fault.

Plaintiff here reiterates many of the arguments raised before the ALJ, including her belief the SSA already had her income and employer information and that she only needed to report changes. (*See* AR 103, 169, 716-17.)  She denies the forms requested information she could have reported, did not have questions about, and did not think was already reported, and asserts she was not aware the information would cause an overpayment or affect her benefits (*see* AR 722, 725). She notes her efforts to comply and her success once she did receive help from the agency.  She also avers the ALJ's failure to make any specific finding of fault required by the regulations, or that she could be found at fault in either making an incorrect statement, failing to furnish information she knew or should have known to be material, or accepting a payment she knew or could have been expected to know was incorrect.  20 C.F.R. § 404.507.

The Commissioner argues plaintiff's inability to reach an agency representative did not relieve her duty to timely furnish information she knew or should have known was material, noting both requests informed plaintiff the agency needed the information "to decide if you can receive or continue to receive disability benefits."  (AR 193, 204.)  The Commissioner denies any indication plaintiff's impairments rendered her unable to appreciate that the amount of her earnings affected the amount of her benefits, and describes the prior ALJ decision awarding benefits as primarily based on plaintiff's response to stress and social limitations (*see* AR 26).  The Commissioner points to plaintiff's admission she knew she had to report any changes to her income

1    and employer information, and argues her persistence in seeking help filling out the form strongly

2    suggests she knew of the impact on her benefits.  The Commissioner argues plaintiff could have

3    at least provided her earnings information, noting plaintiff attested to needing clarification only

4    regarding questions as to what percentage of her work was affected by her disability, and whether

5    she worked under special conditions or received any extra help or special equipment.  (AR 731,

6    733-34.)  The Commissioner contends the ALJ properly focused on the key issue; that is, whether

7    plaintiff, not the agency, was without fault.

8         The Court finds the ALJ failed to demonstrate his compliance with the requirements for

9    finding plaintiff at fault and failed to identify substantial evidence support for his conclusion.  As

10   stated above, a finding of fault requires consideration of plaintiff's age and intelligence, and any

11   physical, mental, educational, or linguistic limitations and, in this case, a determination plaintiff

12   failed to furnish information she knew or should have known to be material.  20 C.F.R. § 507.

13   Also, while not judicially binding, the agency tasks itself with considering a variety of

14   circumstances relevant to an overpayment, such as an individual's understanding and ability to

15   understand and comply with reporting requirements, efforts made to comply, and the

16   understanding of language used by the agency.  POMS GN 02250.005 at C.1.  The agency resolves

17   doubt in an individual's favor if the evidence clearly shows an absence of understanding as to

18   reporting responsibilities.  *Id*.

19        In this case, the ALJ acknowledged, but gave short shrift to the argument the nature of

20   plaintiff's disabilities make it difficult for her to understand paperwork without assistance, even if

21   she had filled out the same form in the past.  The ALJ found it reasonable that plaintiff "had some

22   questions" (AR 15), but did not describe or assess any of the testimony or other evidence associated

23   with plaintiff's mental impairments and limitations.  He did not mention any other circumstances

REPORT AND RECOMMENDATION
PAGE - 10

that must be considered, including age, intelligence, and any physical, educational, or linguistic limitations. Because the ALJ found believable plaintiff's testimony that the agency repeatedly failed to return her calls seeking assistance, consideration of factors associated with her inability to complete the paperwork without assistance was necessary to allow for a determination of fault.

The ALJ also stated plaintiff "took no further steps" and "did not seek help from anyone" other than J. Martin (*id.*), but did not acknowledge or address her testimony she also sought assistance by calling both a general agency phone number and contacting her local SSA office, as she had been advised to do in both the July and August 2013 letters. Nor did the ALJ address plaintiff's testimony or any other evidence associated with her continued attempts to comply once she did receive assistance from J. Doe, or her testimony regarding her misperception as to her reporting responsibilities. The ALJ assumed plaintiff's understanding as to the materiality of the information at issue without providing a sufficient discussion of all of the evidence pertinent to that assumption.

Given the deficiencies in the ALJ's decision, this matter is properly remanded for further consideration of fault. On remand, the ALJ must engage in the required individualized analysis into the circumstances surrounding plaintiff's failure to timely comply with the reporting requirements, identify substantial evidence support for his conclusion, and apply the proper legal standard.

<u>Defeating the Purpose of Title II</u>

If a recipient of disability benefits establishes an absence of fault, the Commissioner must determine whether recoupment of the overpayment would "'defeat the purpose of the subchapter or be against equity and good conscience.'" *Elliott*, 564 F.2d at 1232 (citing 42 U.S.C. § 404(b)). *Accord* 20 C.F.R. § 404.506(a) ("Section 204(b) of the Act provides that there shall be no

REPORT AND RECOMMENDATION
PAGE - 11

1   adjustment or recovery in any case where an overpayment under title II has been made to an

2   individual who is without fault if adjustment or recovery would either defeat the purpose of title

3   II of the Act, or be against equity and good conscience.")  The ALJ here found that, even if plaintiff

4   were to be found without fault, recovery would not defeat the purpose of Title II or be against

5   equity and good conscience.

6       There is no dispute as to the finding regarding equity and good conscience, a factor

7   involving "situations where a person has relied on a payment or notice of payment, and has

8   relinquished a valuable right or changed position detrimentally as a result."  *Elliott*, 564 F.3d at

9   1234 (citing 20 C.F.R. § 404.509).  The parties do, however, dispute whether the ALJ properly

10  determined recovery of the overpayment would not defeat the purpose of Title II.

11      The Court also finds the ALJ should reconsider the question of whether recovery of the

12  overpayment would defeat the purpose of Title II.   However, on remand, given the ALJ's

13  identification of various inconsistencies in plaintiff's reporting as to her income and expenses in

14  the March 2016 request for a waiver, plaintiff's explanations as to discrepancies identified by the

15  ALJ,[2] and the omission of documentation pertinent to the ALJ's conclusion (*see* AR 16 and Dkt.

16  19 at 5, n.3), a revised Request for Waiver of Overpayment Recovery and supportive

17  documentation should be provided by plaintiff and assessed by the ALJ.

18                              **<u>CONCLUSION</u>**

19      For the reasons set forth above, this matter should be REMANDED for further

20

21   _____

22       [2] Plaintiff, for example, testified her mother provided her with some $300.00, give or take, in support every month, but did not give her money and, instead, paid for things plaintiff could not afford.  (AR 725-26.)  Contrary to the ALJ's finding plaintiff failed to "report this income" (AR 16), plaintiff did report her mother's monthly contribution, which did not constitute income received in addition to disability benefits and food stamps.  (*See* AR 172 (identifying a $400 monthly contribution received from her mother each month as "support not cash") and AR 174 ("My mom helps me by buying necessities that I can't afford; she does not give me cash."))

REPORT AND RECOMMENDATION
PAGE - 12

administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**January 11, 2019**</u>.

DATED this <u>26th</u> day of December, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13